IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge S. Kato Crews

Civil Action No. 1:24-cv-01986-SKC-CYC

RANDY GREGORY,

        Plaintiff,

v.

NATIONAL FOOTBALL LEAGUE, and
DENVER BRONCOS TEAM, LLC,

        Defendants.

---

**ORDER**

---

Plaintiff Randy Gregory is a professional football player and former linebacker for Defendant Denver Broncos Team, LLC (Broncos).[1] The Broncos football team is one of the 32 member clubs of Defendant National Football League (NFL), an unincorporated association of the 32 member clubs. Mr. Gregory, the Broncos, and the NFL are bound by a collective-bargaining agreement (CBA) negotiated by the NFL Players Association and the NFL Management Council. The CBA includes a "Policy and Program on Substances of Abuse" (Policy) which contains a list of

---

[1] The following facts are taken from the original complaint (Dkt. 4), the Amended Complaint (Dkt. 20), and Defendants' removal materials (Dkt. 1).

1

substances, including marijuana and synthetic cannabinoids, that players are prohibited from using.

According to the record, Mr. Gregory has been diagnosed with Social Anxiety Disorder and Post-Traumatic Stress Disorder and suffers from chronic pain due to bilateral knee and shoulder injuries. In February 2023, Mr. Gregory's doctor prescribed Dronabinol (a Schedule III FDA-approved drug) to treat his conditions. Dronabinol is a synthetic form of tetrahydrocannabinol (THC), which is the primary active component of marijuana. According to Mr. Gregory, Dronabinol is the only medication that has been effective in treating his conditions.

Seeking an accommodation to use Dronabinol to treat his conditions, in March 2023, Mr. Gregory contacted Lawrence S. Brown, Jr., M.D., a Medical Advisor for the NFL, and provided Dr. Brown with information regarding his diagnoses and his Dronabinol prescription. Mr. Gregory's doctor also provided information explaining the treatment and providing justification for Mr. Gregory's earlier positive THC tests. But the NFL and the Broncos denied Mr. Gregory's request. In May 2023, Mr. Gregory requested a Therapeutic Use Exception (TUE)[2] under the Policy, but that request was also denied.

---

[2] The Policy recognizes that within the list of prohibited substances, there are some medications appropriate for the treatment of certain medical conditions and further provides that appropriately diagnosed players may request a TUE for these medicines.

2

After exhausting his administrative remedies,[3] Mr. Gregory brought this lawsuit in the Arapahoe County District Court and asserted that the NFL and the Broncos failed to accommodate his disability in violation of the Colorado Anti-Discrimination Act (CADA), Colo. Rev. Stat. § 24-34-301, *et seq.*[4] Defendants removed the case to this Court on July 18, 2024, and Mr. Gregory filed a Motion to Remand (Dkt. 34). Defendants have also filed a Joint Motion to Dismiss (Dkt. 61), which is fully briefed.

The Court has thoroughly reviewed both Motions and their related briefing, the controlling law, and the docket.[5] As discussed below, the Court concludes Defendants have not carried their burden to demonstrate that the disagreements in this case require interpretation of the CBA. Consequently, the Court GRANTS the Motion and REMANDS this case to the Arapahoe County District Court.

---

[3] The parties do not dispute that Mr. Gregory exhausted his administrative remedies for his failure to accommodate claims. Defendants may raise the exhaustion issue regarding his retaliation claims with the Arapahoe County District Court.

[4] Following removal, Mr. Gregory amended his pleadings and added two claims asserting that Defendants also retaliated against him in violation of CADA. Dkt. 20.

[5] The arguments in the Motion to Dismiss and accompanying briefs overlap substantially with those in the Motion to Remand, Response (Dkts. 40 (redacted), 41 (unredacted)), and Reply (Dkt. 50). The Court has considered the arguments from both sets of briefing in reaching its conclusions regarding remand.

## I.    MOTION TO REMAND

## A.    STANDARD OF REVIEW

A case removed to federal court under 28 U.S.C. § 1441 must be remanded to state court if, at any time before final judgment, the federal district court finds it lacks subject matter jurisdiction. 28 U.S.C. § 1447(c). The party seeking to remove a state case to federal court—here the NFL and the Broncos—has the burden of showing by a preponderance of the evidence that removal is proper. *Lindstrom v. United States*, 510 F.3d 1191, 1193 (10th Cir. 2007) (citing *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936)). Courts must strictly construe the requirements of removal jurisdiction and "all doubts are to be resolved against removal." *Fajen v. Found. Rsrv. Ins. Co.*, 683 F.2d 331, 333 (10th Cir. 1982).

Absent diversity jurisdiction, a case may be tried in federal court when it arises "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331 (Federal question); *see also Pan Am. Petroleum Corp. v. Superior Court of Del. In and For New Castle Cty.*, 366 U.S. 656, 663 (1961) (in the absence of diversity jurisdiction the face of the complaint must show the case depends on a question of federal law). The federal question must be disclosed on the face of the complaint without reference to the answer or a petition for removal. *Pan Am. Petroleum Corp.*, 366 U.S. at 663; *see also Caterpillar Inc. v. Williams*, 482 U.S. 386, 398-99 (1987) ("[T]he plaintiff is the master of the complaint, [and] a federal question must appear on the face of the

4

complaint."). By avoiding claims under federal law, a plaintiff may bring their case in state court. *Id.*

Without more, "[t]he fact that a court must apply federal law to a plaintiff's claims or construe federal law to determine whether the plaintiff is entitled to relief will not confer subject matter jurisdiction–the implicated federal issue must be *substantial." Dunlap v. G&L Holding Grp. Inc.*, 381 F.3d 1285, 1291-92 (11th Cir. 2004) (emphasis in original). Nor would it be enough that a defense "relies on the preclusive effect of a prior federal judgment, or the pre-emptive effect of a federal statute." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003) (citing *Rivet v. Regions Bank of La.,* 522 U.S. 470 (1998); *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for S. Cal.,* 463 U.S. 1 (1983)). To be sure, the Tenth Circuit has held for more than 40 years "the fact that federal regulations may create a defense to recover on such a claim is immaterial to a finding of federal question jurisdiction." *Madsen v. Prudential Fed. Sav. & Loan Ass'n,* 635 F.2d 797, 799 (10th Cir. 1980).

## B.    SECTION 301 PREEMPTION

Defendants removed this case on the theory of complete preemption. They contend Plaintiff's CADA claims are preempted by Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (LMRA), which manages the activities of labor unions, employers, and employees' activity. Section 301 states, in relevant part: "Suits for violation of contracts between an employer and a labor organization

5

representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a). The Supreme Court has interpreted Section 301 to govern not only "claims founded directly on rights created by collective-bargaining agreements," but also those "claims substantially dependent on analysis of a collective-bargaining agreement." *Caterpillar*, 482 U.S. at 394 (cleaned up).

All suits falling under Section 301 necessarily arise under federal law. *Stout v. City of Albuquerque*, 409 F. Supp. 3d 1277, 1283 (D.N.M. 2019) ("Accordingly, all suits which fall under § 301 must be governed by federal law."); *see also Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 209 (1985) ("[Section] 301 [is] a congressional mandate to the federal courts to fashion a body of federal common law to be used to address disputes arising out of labor contracts."). But not every dispute involving a collective-bargaining agreement is necessarily preempted by Section 301. *Allis-Chalmers Corp.*, 471 U.S. at 211. "Nor is there any suggestion that Congress, in adopting § 301, wished to give the substantive provisions of private agreements the force of federal law, ousting any inconsistent state regulation." *Id*. at 211-12. As a result, only those state-law claims that are not "sufficiently independent" of a collective-bargaining agreement are preempted. *United Steelworkers of America, AFL-CIO-CLC v. Rawson*, 495 U.S. 362, 369 (1990). As the Supreme Court has explained, the "principle of preemption" is that "if the resolution of a state-law claim depends upon the meaning

6

of a collective-bargaining agreement, the application of state law . . . is pre-empted and federal labor-law principles—necessarily uniform throughout the Nation—must be employed to resolve the dispute." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405-06 (1988).

## C.    ANALYSIS

To determine whether Plaintiff's claims for relief are preempted by Section 301, the Court asks first whether the claims involve rights created by the CBA or whether they exist by virtue of state law. If the rights are independent of the CBA, the Court must then analyze the elements of Plaintiff's claims and determine whether a resolution depends on interpreting the CBA. In doing so, the Court may not consider defenses raised by Defendants. *See Caterpillar*, 482 U.S. at 398-99. ("It is true that when a defense to a state claim is based on the terms of a collective bargaining agreement, the state court will have to interpret that agreement to decide whether the state claim survives. But the presence of a federal question, even a § 301 question, in a defensive argument does not overcome the paramount policies embodied in the well-pleaded complaint rule.").

### 1. Reviewing the Amended Complaint

To begin with, the Court addresses Defendants' position that Plaintiff's Amended Complaint is irrelevant to the Court's analysis and that this Court should look only at Plaintiff's original complaint, which contained references to the CBA, the TUE, and the NFL medical advisors. Plaintiff contends this Court may look at both

versions of his pleading. The Court need not resolve this dispute because even if it reviews only the original complaint, Defendants' analysis regarding why Plaintiff's claims are inextricably intertwined with the CBA falls flat.[6]

### 2. Independent and Non-Negotiable State Right

The first question is whether the rights at issue—the right to receive reasonable accommodation for a disability—arises from the CBA. It does not. The CBA does not require Defendants to provide accommodations for disabled employees, and Mr. Gregory is not arguing that it does. To be sure, Plaintiff does not contend Defendants violated the CBA at all.[7]

Defendants' obligations in this case flow from CADA, which the Colorado general assembly enacted for the "fundamental purpose of eliminating discriminatory practices in the workplace." *Williams v. Elder*, 479 P.3d 43, 45 (Colo. App. 2019). The Act provides:

---

[6] The Court notes that Defendants' argument in this regard is limited to listing the various terms or provisions from the CBA that Plaintiff referenced in his original complaint. But as discussed more fully in this order, merely referencing a CBA does not equate to inextricable intertwining.

[7] In a play-action fake, Defendants attempt to recast this case as one involving the parties' rights and obligations under the CBA. Defendants contend Plaintiff does not have a nonnegotiable right under Colorado law to violate a workplace drug policy. Dkt. 41, p.17. This attempt at misdirection is borderline specious. Mr. Gregory asserts no such right nor does he challenge the notion that workplace drug policies are enforceable or that Dronabinol is specifically prohibited under the Policy. Likewise, Defendants' reliance on the Policy and procedures for procuring a TUE is out-of-bounds—these are defenses and not necessary to the Court's inquiry.

> It is a discriminatory or an unfair employment practice [f]or an employer to refuse to hire, to discharge, to promote or demote, to harass during the course of employment, or to discriminate in matters of compensation, terms, conditions, or privileges of employment against any individual otherwise qualified because of disability. . . .
>
> [But with] regard to a disability, it is not a discriminatory or an unfair employment practice for an employer to refuse to hire, to discharge, or to promote or demote an individual with a disability if there is no reasonable accommodation that the employer can make with regard to the disability that would allow the individual to satisfy the essential functions of the job and the disability actually disqualifies the individual from the job.

Colo. Rev. Stat. § 24-34-402(1)(a)(I), (II). Because CADA creates rights and obligations independent of the CBA, the Court turns to whether resolution of Plaintiff's claims depends on interpreting the CBA.

### 3. Failure to Accommodate

In his first two claims, Mr. Gregory alleges Defendants failed to accommodate his disability in violation of CADA. To establish a prima facie, failure-to-accommodate claim under CADA, a plaintiff must show "1) [he] was disabled, 2) [he] was otherwise qualified, 3) [he] requested a plausibly reasonable accommodation, and 4) the [defendant] refused to accommodate [his] disability." *Aubrey v. Koppes*, 975 F.3d 995, 1005 (10th Cir. 2020) (ADA failure to accommodate); *see also Tesmer v. Colo. High Sch. Activities Ass'n*, 140 P.3d 249, 253 (Colo. App. 2006) ("Whenever possible, the CADA should be interpreted consistently with the Americans with Disabilities Act.").

9

In the context of Plaintiff's Motion to Remand, the question is whether resolving these state-law claims could alter the meaning of the CBA. In opposing remand, Defendants' limit their arguments to the second (was Mr. Gregory otherwise qualified) and third (did he request a plausibly reasonable accommodation) elements of the claim. They argue that determining these issues will require extensive interpretation of the CBA. They also argue the Court will have to interpret the CBA to determine whether the NFL is Mr. Gregory's employer and whether the Broncos had authority to grant Mr. Gregory a TUE. These arguments are not persuasive.

### a.  Whether Mr. Gregory was Otherwise Qualified

Under CADA, "[t]he term 'qualified individual' means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Aubrey v. Koppes*, 975 F.3d 995, 1006 (10th Cir. 2020) (citing 42 U.S.C. § 12112(8) (ADA)). Mr. Gregory's employment position was as a professional football player. According to allegations in the pleadings, the Broncos hired Mr. Gregory for substantially more money than he received in his prior contracts with the Dallas Cowboys. Dkt. 20, ¶52. At the time he was hired, the Broncos apparently knew of Mr. Gregory's prior suspensions related to THC. *Id.* ¶53. And despite testing positive for THC during his employment with the Broncos, the club nevertheless expected Mr. Gregory to play in all games. Dkt. 4, ¶2. And during his tenure with the Broncos, Mr. Gregory was apparently never suspended from playing football because of any positive THC drug tests. Based on

these allegations, whether Mr. Gregory was qualified to play football would appear to be a factual inquiry far removed from the CBA.

In their Response to Plaintiff's Motion, however, Defendants contend that determining whether Plaintiff was otherwise qualified for his employment would require the Court to "analyze the various provisions in the CBA and its incorporated NFL Player Contract to take into account the duties and responsibilities of Plaintiff's 'position' as an NFL player as well as the Policy's provisions on testing, intervention programs, and discipline." Dkt. 41, p.12. But Defendants do not explain why these various provisions are necessary to determine whether an individual is qualified to play football. And even if the Court needed to review these provisions, Defendants do not explain what interpretation would be required or how the meaning of the CBA could be altered.

To be sure, Defendants opaquely cite Article 39 of the CBA and Section 8 of its Appendix A (NFL Player Contract), as well as Sections 1.3, 1.4, and 1.5 of the Policy. Dkt. 41, p.12. But Article 39 of the CBA, which governs a player's rights to medical care and treatment, is 27 pages long and contains 21 separate sections governing various obligations of each football club to provide medical care.[8] Dkt. 1-7, pp.230-57. Similarly, Sections 1.3, 1.4, and 1.5 of the Policy span eight pages and contain myriad

---

[8] Given that this article appears largely to create obligations *to* the players *on the part of* the football clubs, the Players Association, and the Management Council, it is unclear why these pages would be necessary to determining whether Mr. Gregory was qualified for his job. But as Defendants did not see fit to explain, the Court does not engage in this inquiry further.

terms and subsections. Dkt. 1-8, pp.10-17. Defendants have not specified what portions of these sections would require interpretation or how interpreting all or any of them might alter the meaning of the CBA. "But this is not [the Court's] riddle to solve, as it is [the Defendants'] burden to establish preemption of [Mr. Gregory's CADA] claim." *Williams v. Nat'l Football League*, 582 F.3d 863, 880 (8th Cir. 2009). The only specific section Defendants cite is Section 8 of the NFL Player Contract, which requires a player to maintain himself in excellent physical condition. Dkt. 1-7, p.355. But even here, it is unclear why this section would require interpretation of the CBA, as opposed to merely referring to it. Defendants have not met their burden of showing that whether Mr. Gregory was qualified for his job is inextricably intertwined with the CBA.

### b. Whether Mr. Gregory's Accommodation was Reasonable

The Court now addresses Mr. Gregory's requested accommodation and asks whether interpretation of the CBA is necessary to determine if it was reasonable. A reasonable accommodation "refers to those accommodations which presently, or in the near future, enable the employee to perform the essential functions of his job." *Freeman v. City of Cheyenne*, No. 23-8022, 2024 WL 464069, at \*4 (10th Cir. Feb. 7, 2024). The question is not whether the accommodation was reasonable under the CBA; it is instead whether it was reasonable under CADA because CADA is the source of the obligation. *Cf. Barlow v. Westin DIA Operator, LLC*, No. 20-cv-01612-DDD-KLM, 2020 WL 12432191, at \*4 (D. Colo. Dec. 2, 2020) (where tipped employee

12

brought claim under Colorado Wage Law and there were no disputed CBA terms, the question was not "whether the 'service charges' are tips under that agreement; it is whether they are tips under Colorado's Wage and Hour Law").

Defendants contend resolving this issue would require interpretation of "numerous Policy provisions, include the standards for a TUE agreed upon by the NFLMC and the NFLPA regarding the use of a prohibited substance." Dkt. 41, p.11. Defendants then argue, as example, that the Court would need to "interpret" the Policy to determine whether:

> • Plaintiff's "off label use" of Dronabinol was reasonable under the Policy, which permits a TUE only where "[t]he medication [is] necessary and indicated for treatment of the specific medical problem for which it has been requested." *See* Policy, App'x F.
>
> • Plaintiff satisfied the Policy rule requiring him to submit evidence that "[a]cceptable alternative treatments with medications that are not prohibited were attempted but failed, or reasons for not prescribing these alternative treatments have been presented." *Id.*
>
> • Plaintiff's TUE request complied with the Policy's requirement that a player "may not begin use of the prohibited substance until after the TUE is granted" to determine whether his fines should be rescinded. *Id.*
>
> • Plaintiff's request, which was made after he tested positive for THC complied with the Policy's rule providing that a "TUE may be granted retroactively only if emergency use of the prohibited substance is necessary to avoid morbidity or mortality of disease or disorder." *Id.*

Dkt. 41, pp.11-12 (citations and brackets in original).

But again, Defendants have not explained why these provisions would require interpretation or how their meaning could be altered when determining whether Mr. Gregory's requested accommodation was reasonable. And Mr. Gregory does not

13

dispute any of these provisions. Dkt. 50, pp.10-12. Moreover, Defendants' suggestion that these are merely "examples" of what interpretation is required point toward a slippery slope of more unspecified sections Defendants would claim to rely on. This will not do—simply stating the CBA must be interpreted does not make it so, and the Court will not address such woefully underdeveloped arguments. *See, e.g.*, *A Brighter Day, Inc. v. Barnes*, 860 F. App'x 569, 575 (10th Cir. 2021) (declining to address argument that was underdeveloped and contained "mostly general legal statements and empty platitudes"); *Tillmon v. Douglas Cty.*, 817 F. App'x 586, 589-90 (10th Cir. 2020) (declining to address argument where party's analysis was "cursory at best").

### c. Whether Defendants had the Authority to Accommodate

Defendants also contend the Court needs to interpret the detailed TUE requirements to determine what authority they had, if any, to grant or refuse Mr. Gregory's accommodation request. Dkt. 41, pp.13-15. The Court is not persuaded by this argument for several reasons.

First, this argument, like those addressing the elements of Mr. Gregory's prima facie case, is cursory at best. The Court is left with the same questions it has had throughout: Which provisions would the Court have to interpret and why? How would the CBA's meaning potentially be altered? How would this case result in divergent interpretations of the CBA? When considering the propriety of removal, the Court must resolve any doubts in favor of remand. Defendants' plethora of undeveloped arguments leave this Court with many doubts.

14

Second, the Broncos contend the Court must interpret the CBA to determine whether the team had the authority to grant the accommodation. But this is not an element of Plaintiff's prima facie case; it is a defense. And while it might have merit, it is not relevant to the Court's present analysis. *See Caterpillar*, 482 U.S. at 398-99.

Finally, the NFL's argument that the Court must interpret the CBA to determine whether it is Mr. Gregory's employer fails too. For one, CADA is far broader than the law at issue in *Miles v. Nat'l Football League*, 641 F. Supp. 3d 91 (D.N.J. 2022), which the NFL relies on. In *Miles*, the district court noted that it would have to interpret the CBA to determine whether there was a "legally recognizable employment relationship between" the plaintiff and the NFL. *Id.* at 97. But the plaintiff in *Miles* filed a claim under New Jersey's Law Against Discrimination, which only applied to the conduct of employers. *See Rich v. State*, 294 F. Supp. 3d 266, 278 (D.N.J. 2018). CADA, on the other hand, applies not only to employers but also to any "person, *whether or not an employer. . .*" who "aid[s], abet[s], incite[s], compel[s], or coerce[s] the doing of any act defined in this section to be a discriminatory or unfair employment practice" or "attempt[s], either directly or indirectly, to commit any act defined in this section to be a discriminatory or unfair employment practice." Colo. Rev. Stat. § 24-34-402(1)(e)(I), (III) (emphasis added). Here, in both the original pleading and the Amended Complaint, Mr. Gregory asserts the NFL is liable as an employer or "a person" who aided, abetted, incited, or coerced a discriminatory employment practice. *See* Dkt. 4, ¶¶68-69; Dkt. 20, ¶¶104-105. Thus, Mr. Gregory

15

may assert a CADA claim against the NFL even if it is not his employer and no interpretation of the CBA is necessary to determine whether the NFL is a "person" within the meaning of CADA.

The NFL's own briefing defeats any argument that interpretation is required here. To be sure, Defendants state that the NFL's Player Contract "*expressly defines* who employs the player." Dkt. 41, p.15. If true, then there is no meaning to discern, and the state court may simply refer to the Player Contract to answer the question. "[T]he bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." *Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994).[9]

Based on the above, the Court concludes Defendants have not met their burden of establishing that Plaintiff's failure to accommodate claims would require interpretation of the CBA.

### 4. Retaliation

In his claims of retaliation, Plaintiff contends Defendants fined him, refused to engage in the interactive process, and subjected him to more invasive and frequent drug testing in retaliation for requesting a disability accommodation. Dkt. 20, ¶¶114-

---

[9] In two sentences, Defendants argue this case is inextricably intertwined with the CBA because the Court would need to review the reasons why Mr. Gregory's discipline was upheld in arbitration. But even if this argument were more developed, it would not be persuasive because the existence of parallel considerations between an arbitration and a state-law claim do not render the state law analysis dependent on an interpretation of the CBA. *See Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 408-410 (1988).

121, 133-140. Defendants argue Mr. Gregory's retaliation claim is inextricably intertwined with the CBA because the Court would need to interpret the CBA to determine whether they had legitimate and nondiscriminatory reasons for the actions they took, including whether Defendants had any discretion to deviate from the testing procedures or the implementation of fines. Dkt. 41, p.22. Supreme Court and Tenth Circuit precedent say otherwise.[10]

The Supreme Court rejected a similar argument in *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399 (1988). In *Lingle*, the plaintiff alleged she was fired in retaliation for filing a workers' compensation claim. The employer, however, argued she was terminated for "just cause" under the CBA. The Supreme Court concluded that the plaintiff's retaliatory discharge claim under state law could be resolved without interpreting the CBA. It held the claim was not preempted even though "the state-law analysis might well involve attention to the same factual considerations as the contractual determination of whether [the employee] was fired for just cause." *Id.* at 408.

---

[10] Defendants cite several cases to support their position. Dkt. 41, pp.21-25. But none of them carry precedential weight in this district and they are directly contrary to Tenth Circuit precedent, which has expressly rejected preemption based on defenses. *See Jarvis v. Nobel/Sysco Food Servs. Co.*, 985 F.2d 1419, 1427 (10th Cir. 1993) ("[I]n a retaliatory discharge suit under Colorado law, the employer's contractual rights are not relevant.").

17

The Tenth Circuit, in *Marshall v. TRW, Inc., Reda Pump Division*, 900 F.2d 1517 (10th Cir.1990) and *Davies v. Am. Airlines, Inc.*, 971 F.2d 463 (10th Cir. 1992), faced similar factual scenarios where the plaintiffs asserted they were discharged in retaliation for engaging in protected conduct—filing a workers' compensation claim and unionizing activities, respectively. The defendants argued they had just cause for the discharges under the CBAs. The Tenth Circuit, however, expressly rejected these defenses and, citing *Lingle*, held that retaliatory discharge claims do not require interpretation of a CBA because even if an employer had "just cause" to terminate employment, "the question is whether the employer's *motivation* for the discharge was the rule violation or retaliation for an activity protected by the retaliatory discharge law." *Davies*, 971 F.2d 463 at 466 (emphasis added) (citing *Lingle* and *Marshall*).

So too here. While this case does not involve retaliatory discharge, Defendants' motives are central to Mr. Gregory's claims. To establish a prima facie case of retaliation in violation of CADA, "a plaintiff must prove that (1) he engaged in a protected activity; (2) he was subjected to an adverse employment action subsequent to or contemporaneous with the protected activity; and (3) there was a causal connection between the protected activity and the adverse employment action." *Foster v. Mountain Coal Co., LLC*, 830 F.3d 1178, 1186-87 (10th Cir. 2016) (cleaned up); *Tesmer*, 140 P.3d at 253 (courts should consider CADA consistently with the ADA). A plaintiff claiming retaliation may establish causation through "evidence of

circumstances that justify an inference of *retaliatory motive*, such as protected conduct closely followed by adverse action." *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001) (emphasis added).[11]

The other problem is Defendants' arguments regarding interpretation of the CBA are defenses concerning their claimed motivation for requiring Mr. Gregory's drug testing and fining him. Even if reference to the CBA is necessary to establish these defenses, it is just that—a reference to the applicable provisions with no corresponding or competing interpretation required; and merely referring to a CBA does not equate to preemption under Section 301 of the LMRA. *Jarvis v. Nobel/Sysco Food Servs. Co.*, 985 F.2d 1419, 1427 (10th Cir. 1993) (Defendants' "non-retaliatory explanation of [Plaintiff's] [treatment is] merely their interpretation of the CBA. So long as this interpretation was made in good faith and actually motivated [Defendants'] actions, they present a good defense without regard to the correctness of the interpretation."); *see also Caterpillar Inc.*, 482 U.S. at 398-99.

The Court finds Mr. Gregory's claims of retaliation are not inextricably intertwined with the CBA.

---

[11] Defendants attempt to distinguish Plaintiff's cited cases by arguing the prima facie claims in those cases expressly referenced an "employer's motive." Although the elements of a CADA retaliation claim do not use the word "motive," it is the core inquiry of the causation prong. The issue surrounding a causal connection is whether the plaintiff's protected conduct was the reason, *i.e.*, motive, for the adverse action. *O'Neal*, 237 F.3d at 1253. That the word "motive" is not used in the prima facie case is of no consequence considering the legal interpretations of the elements of a CADA.

### D.    CONCLUSION

Because federal courts are courts of limited jurisdiction, the Court presumes "no jurisdiction exists absent an adequate showing by the party invoking federal jurisdiction." *U.S. ex rel. Hafter D.O.v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1160 (10th Cir. 1999). While Defendants have made numerous arguments, none of them alone or together meets a preponderance of the evidence standard. Because this Court is left with doubts regarding whether interpreting the CBA is necessary to resolve Mr. Gregory's claims, the Court must resolve those doubts in favor of remand. Mr. Gregory's Motion (Dkt. 34), therefore is GRANTED.

## II.    MOTION TO DISMISS

Because the Court orders remand, the Motion to Dismiss (Dkt. 61) is MOOT and DENIED without prejudice.

\*        \*        \*

For the reasons shared above, the Court ORDERS as follows:

1.  Plaintiff Randy Gregory's Motion to Remand is GRANTED;

2.  Defendants Denver Broncos Team, LLC, and National Football League's Motion to Dismiss is DENIED WITHOUT PREJUDICE.

3.  The Clerk of Court shall remand this case to the Arapahoe County District Court.

20

DATED: June 26, 2026.

BY THE COURT:

S. Kato Crews
United States District Judge